# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIEL JOHNSON, | : |
| Plaintiff | : |
| | : CIVIL ACTION NO. 3:CV-17-0364 |
| v. | : |
| | : (Judge Caputo) |
| JOHN WETZEL, *et al.*, | : |
| Defendants | : |

**M E M O R A N D U M**

Presently before the Court is Defendants' motion to dismiss the Amended Complaint. (ECF No. 50.) Specifically, Defendants Secretary Wetzel, Ms. Varner, Superintendent (Supt.) Kauffman, Ms. Hollibaugh, Ms. Jadlocki, Ms. Clinger, Mr. Moyer, Corrections Officer (CO) Kaleta and CO Reitz seek: (1) dismissal of the Amended Complaint for failure to comply with Federal Rule of Civil Procedure 8; (2) dismissal of unrelated claims concerning events that transpired at SCI-Coal Township involving CO Kaleta and CO Reitz; (3) dismissal of claims against Secretary Wetzel, Ms. Varner, Supt. Kauffman, Ms. Hollibaugh, Ms. Jadlocki and Mr. Moyer for lack of personal involvement; and (4) dismissal of claims against Ms. Clinger for failure to state a cognizable claim. After receiving several enlargements of time, Mr. Johnson filed an opposition brief. (ECF No. 59.) The motion is now ripe for disposition.

For the reasons that follow, Defendants' motion to dismiss the Amended Complaint will be granted. Leave to file a second amended complaint will be denied as futile.

## I. Factual and Procedural Background

### A. Procedural History

On February 27, 2018, Mr. Johnson filed his initial Complaint concerning the deduction of funds from his inmate account while housed at Smithfield State Correctional Institution (SCI-Smithfield), in Huntingdon, Pennsylvania. (ECF No. 1.) Prior to service of the Complaint, Mr. Johnson sought leave to file an amended complaint. (ECF No. 11.) The Court granted Plaintiff twenty-one days to file an amended complaint that complied with Fed. R. Civ. R. 8(d). Mr. Johnson was warned that his failure to file a timely amended complaint would result in the Court moving forward on his original complaint. *See* ECF Nos. 13 and 14. After failing to file a timely amended complaint, the Court directed service of the Complaint on the named defendants. (ECF No. 16.)

Defendants filed a motion to dismiss the Complaint, complete with supporting brief. (ECF Nos. 23 and 24.) Mr. Johnson then sought leave to file an amended complaint claiming he was denied paper and pen during the time in which he was to file an amended complaint. (ECF No. 40.) On February 5, 2018, the Court dismissed without prejudice Defendants' motion to dismiss and granted Plaintiff leave to file an amended complaint. (ECF Nos. 43 and 44.) After receiving several enlargements of time, on April 26, 2018, Mr. Johnson filed a forty-page Amended Complaint. (ECF No. 49.) Mr. Johnson added new claims and new defendants in his Amended Complaint. (*Id.*) Defendants filed a motion to dismiss the Amended Complaint on May 10, 2018. (ECF No. 50.) Plaintiff filed his opposition brief in October 2018. (ECF No. 59.)

**B. Amended Complaint**

The facts as alleged in Mr. Johnson's Amended Complaint are as follows:

Mr. Johnson challenges the constitutionality of various Pennsylvania Department of Corrections (DOC) policies "which govern his inmate funds or property." (ECF No. 49, p. 2.) He alleges the DOC policies that allow indigent inmates to anticipate funds in their inmate prison accounts for the purpose legal postage and photocopies and then allow the DOC to confiscate funds from their accounts when available, to recover these debts, are unconstitutional. (*Id*.) Mr. Johnson identifies the following policies as "constitutionally infirm": (1) DC-ADM 803, *Inmate Mail and Incoming Publications*, allows an indigent inmate to request the anticipation of funds on their account for legal postage and photocopies as well as the repayment of this debt upon the availability of funds from the inmate's account; (2) DC-AMD 003, *Release of Information Policy*, sets out the copying fee to be charged for different types of document requests; and (3) DC-ADM 005, *Collection of Inmate Debts*, addresses the order of repayment of debts owed by inmate.[1] (*Id*., p. 3.) Indigent inmates, according to Plaintiff, should not be charged for legal postage and copying fees. He argues that to do so imposes excessive fines on "litigious indigent prisoners to be placed into insurmountable debt without any legitimate penological interests in security, order or rehabilitation." (*Id*., p. 26.) Indigent inmates, according to Plaintiff, should not be charged for such necessities.

Mr. Johnson claims Secretary Wetzel, the "final policy maker," and Chief Grievance Officer Varner have "constructive notice" of the constitutionally infirm

---

[1] As the DOC policies cited by Mr. Johnson are integral to his claims, the Court will take judicial notice of them. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). These policies are available to the public at https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last visited March 20, 2019).

- 3 -

provisions of the photocopy and postage policies. (*Id*., pp. 4 – 5.) Mr. Johnson acknowledges he never notified Secretary Wetzel orally or in writing of the infirmities of the policies but argues Secretary Wetzel had an affirmative constitutional duty to investigate all policies and procedures of his predecessor, Jeffrey Beard, upon assuming the role as Secretary. (*Id*., p. 6.)

"Supervisory liability applie[s] to Defendants Superintendent Kauffman and Facility Grievance Coordinator Hollibaugh." (*Id*., p. 5.) While housed at SCI-Smithfield, Inmate Accounts worker Ms. Clinger, "without statutory authority removed funds from Plaintiff's account for legal postage and photocopy costs" on February 19, 2015. (*Id*., p. 6.) Both Superintendent Kauffman and Ms. Hollibaugh reviewed and denied his grievances concerning this issue. Chief Grievance Officer Varner also failed to correct the actions of Defendant Clinger. (*Id*., p. 22.)

Business Manager Moyer and Inmate Accounts Supervisor Jadlocki are liable for damages as they are Ms. Clinger's supervisors but failed to correct her errors once Plaintiff brought them to their attention. (*Id*.) When requested by Plaintiff, Business Manager Moyer did not refund the seized $45.00 to his account. (*Id*., p. 13.) Mr. Johnson also claims Defendants' policy of charging non-indigent inmates for personal photocopies of non-legal materials, and prohibiting indigent inmates from making personal photocopies, is unconstitutional.[2] (*Id*., p. 23.)

Three years later, at SCI-Coal Township, Mr. Johnson claims CO Kaleta and CO Reitz assaulted him on April 17, 2018, after he "threw a meal tray into Mr. C/O Kaleta's abdomen". (*Id*., p. 30.) They assaulted him by intentionally closing the food slot to his

---

[2] Notably, Mr. Johnson does not state any defendant or other prison official ever prevented him from making photocopies of non-legal materials.

- 4 -

Restricted Housing Unit cell door on his arms and hands. (*Id.*, p. 31.) They also engaged in a wrestling match with Plaintiff until CO Kaleta threated Mr. Johnson with a stun gun. (*Id.*) At the time Mr. Johnson filed his Amended Complaint he was "in the preparations and exhaustion of administrative remedies at this time for above SCI Coal Township civil actions." (*Id.*)

## II. Motion to Dismiss Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Newtork*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). In deciding a Rule 12(b)(6) motion, the Court may also consider "documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, its subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citations and internal quotations marks omitted).

A complaint filed by a *pro se* plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 – 21, 92 S.Ct. 594, 596, 30 L.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Nonetheless, the complaint still "must contain allegations permitting 'the reasonable inference that the defendant is liable for the misconduct alleged." *Jackson v. Div. of Developmental Disabilities*, 394 F. App'x 950, 951 n. 3 (3d Cir. 2010) (nonprecedential) (quoted case omitted).

### III. Discussion

Defendants move to dismiss the Amended Complaint on the following grounds: (1) it fails to comply with Federal Rule of Civil Procedure 8; (2) it contains claims against new defendants that are unrelated to the alleged illegal deduction of funds from his inmate account that occurred at SCI-Smithfield; (3) it fails to allege the personal

involvement of Secretary Wetzel, Ms. Varner, Supt. Kauffman, Ms. Hollibaugh, Ms. Jadlocki and Mr. Moyer; and (4) it fails to state a cognizable claim against Ms. Clinger. The Court will address the arguments in that order.

### A. Failure to Comply with Fed. R. Civ. P. 8

> Rule 8 requires, inter alia, a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2). The purpose of this rule is to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.' Bell Atl Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Thus, dismissal for violation of Rule 8 'is usually confined to instances in which the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised.' Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008) (quotation marks omitted); see also Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995) (stating same).

Bhatt v. Hoffman, 716 F. App'x 124, 127 (3d Cir. 2017).

The Court previously cautioned Mr. Johnson that his Amended Complaint must conform with the requirements of Fed. R. Civ. P. 8. *See* ECF Nos. 13 and 43. He was specifically advised that his allegations were to be set forth in short, concise and simple numbered paragraphs. *See* ECF No. 13. He was instructed to be specific as to the time, place and claims against each named defendant. (*Id.*) While the Court agrees with Defendants that Mr. Johnson's Amended Complaint is not the model of brevity or clarity, it will not be dismissed as violative of Rule 8. Central to this decision is Defendants' failure to assert that they cannot determine the grounds upon which Plaintiff's claims rest against each defendant. *See* ECF No. 51, pp. 3 – 4. Although full of conclusions, laborious to decipher, and scant on facts, it is clear Mr. Johnson

presents two claims in his Amended Complaint. The first seeks to hold Secretary Wetzel, Ms. Varner, Supt. Kauffman, Ms. Hollibaugh, Ms. Jadlocki, Mr. Moyer and Ms. Clinger responsible for what he considers to be their respective roles in the February 20, 2015 confiscation of $45.00 from his inmate account for the repayment of anticipated legal photocopies and legal postage fees. This event occurred at SCI-Smithfield. The second claim occurred three years later at a different facility, SCI-Coal Township, and is an excessive use of force claim against CO Kaleta and CO Reitz, stemming from an April 2018 incident. Accordingly, Defendants' motion to dismiss based on Mr. Johnson's failure to comply with Fed. R. Civ. P. 8 will be denied.

### B. Impermissible Joinder of CO Kaleta and CO Reitz

Rule 20 of the Federal Rules of Civil Procedure governs the permissive joinder of parties in a single action. Fed. R. Civ. P. 20(a)(2) allows persons to "be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009). However, the policy behind Rule 20 is not a license to join unrelated claims and defendants in a single lawsuit. *See Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (nonprecedential).

Additionally, given that Mr. Johnson is proceeding *in forma pauperis*, Rule 20 "takes on additional importance considering the Prison Litigation Reform Act of 1995 ("PLRA")," 110 Stat. 132 – 71, as amended, 42 U.S.C. § 1997e *et seq.*, as "a prisoner-plaintiff who is permitted to combine separate, independent claims into one complaint is able to circumvent the PLRA's filing fee requirements and [its] potential 'three strikes' limitation." *Saltalamacchia v. Wentzel*, Civ. No. 3:14-CV-00868, 2017 WL 2843302, at *3 (M.D. Pa. June 9, 2017), *report and recommendation adopted*, 2017 WL 2834507 (M.D. Pa. June 30, 2017).

Defendants' argument that the events concerning CO Kaleta and CO Reitz took place several years after the February 2015 events alleged in the original complaint, and at a different facility, is unrefuted by Plaintiff. Mr. Johnson fails to demonstrate any connection between CO Kaleta and CO Reitz and the Defendants named in the original Complaint. Plaintiff fails to plead any commonality among CO Kaleta and CO Reitz and the original Defendants. As such, they may not be joined as Defendants in this action.

Additionally, Defendants seeks dismissal of the claims against CO Kaleta and CO Reitz based on Plaintiff's admitted failure to fully exhaust his administrative remedies as to his claim against them prior to filing his Amended Complaint. The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). While the exhaustion requirement is an affirmative defense that must be pleaded and proven by a defendant and a prisoner need not allege that he has exhausted his administrative

remedies, *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007), the Court may dismiss an action where the Plaintiff's failure to exhaust is clear on the face of the complaint. *McPherson v. United States*, 392 F. App'x 938 (3d Cir. 2010); *Ray v. Kertes*, 285 F.3d 287, 293 n. 5 (3d Cir. 2002); *see also Booth v. Churner*, 206 F.3d 289 (2000) (affirming *sua sponte* dismissal of excessive use of force claim where prisoner plaintiff conceded he did not exhaust administrative remedies). Here, Mr. Johnsons states in his Amended Complaint that he "is in the preparations and exhaustion of administrative remedies at this time for above SCI Coal Township civil actions." (ECF No. 49, p. 31.) Mr. Johnson does not dispute that he failed to fully exhaust his administrative remedies pertaining to his claims against CO Kaleta and CO Reitz when he filed his Amended Complaint. Accordingly, dismissal without prejudice of Mr. Johnson's claims pertaining to the events at SCI-Coal Township, including those against CO Kaleta and CO Reitz, is appropriate. Mr. Johnson may pursue these claims in a separate acton.

**C. Failure to Allege the Personal Involvement of Secretary Wetzel, Ms. Varner, Supt. Kauffman, Ms. Hollibaugh, Ms. Jadlocki and Mr. Moyer.**

Individual liability can be imposed under 42 U.S.C. § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)); *Sutton v. Rasheed*, 323 F.3d 236, 249 – 50 (3d Cir. 2003). The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or

of actual knowledge and acquiescence." *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207). Such allegations, however, must be made with appropriate particularity in that a compliant must allege the "conduct, time, place, and persons responsible." *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207 - 08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. Moreover, a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 201 – 202 (3d Cir. 2000). Allegations that a supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" do not suffice. *Broadwater v. Fow*, 945 F.Supp.2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex rel. Z.H.*, 226 F.3d at 202).

Defendants assert Mr. Johnson's claims against all remaining Defendants, except for Ms Clinger, must be dismissed due to his failure to show their personal involvement in the alleged deprivation of funds from his inmate account. *See* ECF No. 51, pp. 6 – 8. The Court agrees.

Plaintiff's claims against John Wetzel are based on his role as the DOC's Secretary. Mr. Johnson asserts Secretary Wetzel is responsible for the taking of funds from his account because he is the "final policy maker" of DC-ADM 803 and DC-ADM 005 which charge indigent inmates for legal postage and photocopies, and then allows the DOC to deduct these fees from the inmate's account when available. The Court agrees with Defendants that Mr. Johnson does not allege any facts to suggest that

Secretary Wetzel knew of, directed, or otherwise took any action concerning Ms. Clinger's deduction of funds from his inmate account. Without any allegations of Secretary Wetzel's affirmative participation in the alleged wrongdoing, Mr. Johnson's claims are insufficient to find Secretary Wetzel liable as there is no *respondeat superior* liability in § 1983 cases.

Additionally, to the extent Mr. Johnson seeks to impose liability against Secretary Wetzel for failing to establish a policy that provides indigent inmates like himself free legal postage and photocopies, he fails to state a cognizable claim. It is well settled "that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). "It is [also] indisputable that indigent inmates must be provided at state expense" with basic materials necessary to draft legal documents and with stamps to mail them. *Id.*, 430 U.S. at 824, 97 S.Ct. at 1496. However, this does not mean that prisoners have a constitutional right to unlimited free postage or copying. See *Montanez v. Sec'y Pa. Dep't. of Corr.*, 773 F.3d 472, 476 (3d Cir. 2014) ("Inmates are … responsible for … the cost of access to legal services."); *Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997) (no First Amendment fight to subsidized mail); *Kershner v. Mazurkiewicz*, 670 F.2d 440, 444 (3d Cir. 1982) ("Pads, pens, pencils, and photocopy machines" are not constitutionally required under *Bounds*); *Atwell v. Levan*, 557 F. Supp.2d 532, 557 (M.D. Pa. 2008) (There is "no First Amendment right to subsidized mail.") (citing *Salkeld v. Tennis*, 248 F. App'x 341, 342 (3d Cir. 2007)). "The constitutional concept of an inmate's right of access to the courts does not require that prison officials provide inmates free or unlimited access to photocopying machinery." *Johnson v. Parke*, 642 F.2d 377, 380 (10th Cir. 1981). Here,

the DOC provides each inmate eight, one-ounce, first-class letters per month without charge. *See* DC-ADM 803, Section 1(A)(7). "Upon written request, an indigent inmate … shall be able to anticipate the cost for postage to file papers necessary for the good faith pursuit of legal remedies." *Id.,* Section 1(K). "An indigent inmate may anticipate on his/her account, postage for legal mail, to include exhaustion of grievances, and copying charges up to $10 per month … [a]n inmate is responsible for managing his/her funds and monthly postage allowance to meet his/her legal needs." *Id.,* Section 1(K)(2)(a)(1). In accordance with DC-ADM 005, Collection of Inmate Debts, "any money received in an inmate's account shall be used to satisfy the postage debt and copying fees." *Id.,* Section 1(K)(2)(a)(3). Accordingly, Mr. Johnson fails to state a cognizable claim against Secretary Wetzel for these policies as there is no constitutional right to free legal mail or photocopies. Moreover, the policies Mr. Johnson argues are "constitutionally infirm" only allow inmates who have submitted a "written request" for the anticipation of legal postage and photocopying the ability to go into debt for these items. The DOC policies also place the indigent inmate on notice that "any money received in an inmate's account shall be used to satisfy the postage debt and copying fees." *Id.,* Section 1(K)(2)(a)(3). While it is understandable that Mr. Johnson was looking forward to the $45.00 dollars his family sent him, he is also responsible for his own litigation costs, including legal postage and photocopies.

Mr. Johnson's claims against Mr. Moyer and Ms. Jadlocki fail for similar reasons. Plaintiff sues these individuals based on their supervisory positions over Ms. Clinger and their failure to correct her misdeed of deducting funds from his account to satisfy his postage debt and photocopying fees. Their alleged improper after-the-fact responses to

Plaintiff's request slips concerning the matter do not constitute their personal involvement in the actual confiscation of funds by Ms. Clinger.  See *Rode*, 845 F.2d at 1208; *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to an inmate's grievances do not establish the personal involvement of the officials and administrators in the underlying deprivation).  As there are no allegations that either Mr. Moyer or Ms. Jadlocki were directly involved, directed, or had actual knowledge of the alleged constitutional violation other than in their capacities as supervisors after-the-fact, Mr. Johnson's claims against them rest impermissibly upon a theory of supervisory liability and, therefore, must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Likewise, Plaintiff's claims against those involved in reviewing, responding to, and denying his grievances based upon Ms. Clinger's withdrawal of funds from his account, fail to allege sufficient facts to show their personal involvement in the alleged constitutional violation.  See *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); *Brooks*, 167 F. App'x at 925.  *See also Wilkerson v. Shafer*, Civ. No. 4:09-CV-2539, 2011 WL 900994, at *7 (M.D. Pa. March 14, 2011) ("participation in after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances.") Consequently, Mr. Johnson's claims against Ms. Varner (Chief Grievance Officer), Superintendent Kauffman, and Ms. Hollibaugh (Institutional Grievance Coordinator) are subject to dismissal based on Plaintiff's failure to establish their personal involvement in

the alleged underlying constitutional misconduct based strictly on their review of his grievance.

### D. Failure to state a claim against Ms. Clinger

Mr. Johnson, an indigent inmate at the time, was indebted to the DOC for legal copies and legal postage when he received $45.00 from a family member. When funds were available in his account, Ms. Clinger deducted them to repay this debt. Mr. Johnson alleges Ms. Clinger violated his Due Process rights when she deducted the funds from his account.

Section 1983 provides that persons acting under color of state law may be found liable if they deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254 - 55, 101 L.Ed.2d 40 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

The Fourteenth Amendment prohibits inmates from being deprived of their property without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 536 – 37, 101 S.Ct. 1908, 1913 - 14, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 106 S.Ct. 662, 474 U.S. 327, 88 L.Ed.2d 662 (1986). However, the unauthorized negligent or intentional deprivation of funds from an inmate's prisoner account does not violate procedural due process requirements "if a meaningful post-

deprivation remedy for the loss is available." *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984)). The United States Court of Appeals for the Third Circuit has held that the DOC's grievance system (DC-ADM 804) constitutes an adequate postdeprivation remedy. *Monroe*, 536 F.3d at 210; *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison's grievance program and internal review provided an adequate postdeprivation remedy to satisfy due process requirements). Alternatively, Pennsylvania law provides an adequate remedy for intentional wrongs committed by state officials. *See Dockery v. Beard*, 509 F. App'x 107, 113 - 14 (3d Cir. 2013) (nonprecedential) (state prisoner has adequate postdeprivation remedy in state tort law action for conversion); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (nonprecedential) (holding Pennsylvania Tort Claim Act provided an adequate postdeprivation remedy for willful deprivation of property without due process); *see also* 42 Pa. Cons. Stat. Ann. § 8522(a), (b)(3) (common law action for conversion).

Mr. Johnson's claim against Ms. Clinger for the alleged unlawful seizure of funds from his account fails because of the availability of a meaningful post deprivation remedy to challenge the deprivation. Mr. Johnson concedes he utilized the DOC's grievance policy, and properly exhausted it, to have the confiscated funds returned to his account prior to filing this action. Thus, he was provided with all the due process to which he was entitled with respect to the deduction of funds from his account to satisfy his legal postage and photocopy debt. The fact that Mr. Johnson is dissatisfied with the outcome received through the grievance process does not equate to a denial of due

process.  See *Austin v. Lehman*, 893 F. Supp. 448, 454 n. 4 (E.D. Pa. 1995) ("Of course, that Plaintiff did not prevail in this procedure [DOC's internal grievance review procedure] in no way affects the procedure's adequacy as a post-deprivation remedy.") Accordingly, Mr. Johnson's due process claim against Ms. Clinger's based on the alleged unauthorized deduction of funds from his inmate account to repay his debt for advanced legal postage and copying fees is subject to dismissal with prejudice.

IV.   **Leave to Amend**

*Pro se* litigants are to be granted leave to file a curative amended complaint even when the plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.  See *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 – 46 (3d Cir. 2008).  Because the Court finds that Plaintiff's claims lack any arguable basis in law and fact, allowing Plaintiff the opportunity to file a second amended complaint would be futile. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012) (nonprecedential).

V.   **Conclusion**

For the reasons set forth above, the Court will grant Defendants' motion to dismiss the Amended Complaint (ECF No. 50) and dismiss the action.

An appropriate order follows.

Date:  March 20, 2019         /s/ A. Richard Captuo
                              **A. RICHARD CAPUTO**
                              **United States District Judge**